**CITY OF HOLDENVILLE and The State Insurance Fund, Petitioners,**

v.

**Anita J. BISE and the State Industrial Commission of the State of Oklahoma, Respondents.**

**No. 38595.**

Supreme Court of Oklahoma.

June 30, 1959.

Mont R. Powell, Mary Elizabeth Cox, Oklahoma City, Angus M. Woodford, Holdenville, for petitioners.

Stevenson, Huser & Huser, Holdenville, Mac Q. Williamson, Atty. Gen., Richard M. Huff, Asst. Atty. Gen., for respondents.

HALLEY, Justice.

Anita J. Bise, hereinafter called claimant, widow of Leonard P. Bise, referred to as employee, recovered an award under the death benefit provisions of the Workmen's Compensation Act, 85 O.S.1951 § 1 et seq. The City of Holdenville, employer, and its insurance carrier, State Insurance Fund, hereinafter called petitioners, bring this proceeding to review the award.

Winfred Thedford, Fire Chief, testified he had been with the fire department twelve years, nine months prior to his appointment as Fire Chief in the place left vacant by the death of employee; that he was Assistant Fire Chief prior thereto. The fire department of the City of Holdenville was in charge of a rural control program. The department also operated a truck for aid in control of fire in rural areas. The department paid the Fire Chief monthly for his use of his personal automobile. The rural control program has been in effect since 1953. It is a fire prevention program. For this purpose calls were made to the country. Neither the firemen nor the city were paid for calls made in the rural areas. The department went within range of 30 miles on such calls. Employee carried clothing equipment used in fighting fires both in the city and rural areas in his automobile. Witness had occasion to go with employee when he was making inspections relative to fire prevention. For this purpose trips were made past the edge of town. Witness went with employee in employee's personal car. There were certain points of observation each direction from town which witness and employee visited on these trips. On cross-examination he stated it was not unusual to make these trips at night. Both the rural aid and the inspection program were officially approved by the City of Holdenville.

Anita Bise testified her husband was Fire Chief. He had supper at home at approximately 6 o'clock P.M. on the night of the accident, December 11, 1957, and stayed home a little over an hour. He then went to his father's home and stayed approximately twenty minutes and then went to the fire station. He came home at 10:30 P.M. and she and employee went in his car to a hotel across from the fire station where employee bought a pack of cigarettes and returned to the car. The wind was high. They drove over to Holdenville and headed toward a ranch on Highway 270 to the golf course to a little high place on a hill to see if employee could see any smoke from fires. They came back down Hinkle Street that detours between Highway 270 and went out East Main to the first road just past the drivein theater. They came back up Main Street and turned up Highway 270 going west toward Wewoka and drove to the Norb Smith Place which was on a hill. They pulled off the highway to turn and come back to town but did not turn. Employee discovered what he thought to be a fire. While on the way to this location when they reached a place about three miles north and three miles west of Holdenville employee sustained the accident resulting in his death when his car was wrecked. Claimant was asked why they went to each of these places after the purchase of the cigarettes and she stated it was to check for fires. Each of these places, except the one to which they were going at the time of the accident, had been referred to by the Fire Chief, Thedford, or claimant as points from which to watch for fires in the fire prevention program sponsored by the City of Holdenville.

A review of the evidence discloses that employee covered the City of Holdenville and went to locations approximately two

miles outside the city limits in the four general directions of east, south, north, west, although not necessarily in that order. The testimony of these two witnesses constitutes the only testimony offered.

The sole argument presented by petitioners is the accidental injury did not arise out of and in the course of the employment. Petitioners cite Indian Territory Illuminating Oil Co. v. Lewis, 165 Okl. 26, 24 P.2d 647. Therein it was held an employee, injured when a robber attacked him on the employer's premises when employee returned at night to work on some records, did not sustain an accidental injury arising out of and in the course of his employment. In Chicago Pneumatic Tool Co. v. McGrew, 178 Okl. 439, 63 P.2d 749, an employee injured while making a trip to obtain an automobile for his personal use did not sustain an accidental injury arising out of and in the course of employment. In Iverson Tool Co. v. Phillips, 161 Okl. 119, 17 P.2d 475, an award was vacated where the employee, a salesman, was injured while riding from Oklahoma City to his home in Duncan. Duncan was outside of his territory. In Cosmos Mining Co. v. State Industrial Commission, 101 Okl. 283, 225 P. 720, it was held that it was not established that the disability of the employee was caused by an accidental injury arising out of and in the course of employment. We shall not review the remaining cases cited by petitioners.

In Consolidated Pipe Line Co. v. Mahon, 152 Okl. 72, 3 P.2d 844, in sustaining an award for an injury caused by lightning, it is stated:

"An injury is received 'in the course of the employment' when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of the employment' when there is apparent to the rational mind upon consideration of all the circumstances a causal relation between the conditions under which the work is required to be performed and the resulting injury."

Petitioners argue the evidence discloses employee was driving around town with his wife on a pleasure trip. The testimony of the only two witnesses is to the contrary. The more particular question is whether the evidence of the Fire Chief and claimant supports the award. We hold that it does. It is argued if employee was on the way to a rural fire he was going away from any possible aid. This argument overlooks the pertinent fact that employee being Fire Chief would be in a position to aid by suggestion and advice any group of fire fighters.

Petitioners argue the court should weigh the evidence and determine as a matter of law whether the accidental injury arose out of and in the course of employment. In Standish Pipe Line Co. v. Johnson, 197 Okl. 238, 169 P.2d 1018, it is stated:

"* * * It is undisputed that claimant was employed by petitioner at the time and that such employment was a hazardous one, but petitioner contends that the evidence was wholly insufficient to sustain the award made by the Commission and that under the rule announced in McKeever Drilling Co. v. Egbert, 170 Okl. 259, 40 P.2d 32, and Cardwell Mfg. Co. v. Thomas, 192 Okl. 143, 134 P.2d 562, whether claimant received an accidental injury is a jurisdictional question, and that in passing upon it this court will weigh the evidence and determine that question independently of the finding by the State Industrial Commission.

"The true rule is expressed by this court in Oklahoma Gas & Electric Co. v. Santino, 158 Okl. 70, 12 P.2d 221, as follows:

"'The question of whether an injury arose out of and in the course of employment is one of fact to be determined by the Industrial Commission under the circumstances of each particular case, and, where there is any testimony reasonably tending to support its finding, it will not be disturbed on an application to vacate the award.'

"See also LeFlore-Poteau Coal Co. v. Thurston, 184 Okl. 178, 86 P.2d 284; Prairie Cotton Oil Co. v. State Industrial Commission, 187 Okl. 378, 102 P.2d 944, and Sinclair-Prairie Oil Co. v. Stevens, 194 Okl. 109, 148 P.2d 176."

There is competent evidence reasonably tending to support the finding that the accidental injury resulting in death arose out of and in the course of the employment.

In a reply brief petitioners argue that 11 O.S.Supp.1957 § 343 makes municipal fire departments agencies of the State and therefore employee was an employee of the State. Petitioners also refer to 63 O.S.1951 § 175, which directs fire chiefs to make an inspection of buildings. These questions were not raised in the brief of petitioner and we do not find where they were raised in the proceeding below. We see no reason to discuss the apparent purport of these sections. They in no manner affect the right of claimant herein.

While not directly in point reference is made to City of Burlington v. Pieters, 195 Wis. 536, 218 N.W. 816, in which an award was made to a volunteer fireman injured while attending a rural fire.

We think that under 11 O.S.Supp.1957 § 342, it was proper to find that the deceased husband of respondent was serving in his regular line of duty. That part of the Section that is applicable here is as follows:

"All municipal firemen, full paid or volunteer, attending and serving at fires or doing fire prevention work or rescue, resuscitation, first aid, inspection or any other official work outside the corporate limits of a municipality as hereinabove provided shall be considered as serving in their regular line of duty as full as if they were serving within the corporate limits of their own municipality, * * *."

Award sustained.

DAVISON, C. J., WILLIAMS, V. C. J., and JOHNSON, BLACKBIRD, JACKSON, IRWIN, and BERRY, JJ., concur.